I'm sure I mispronounced the name, but you can correct me. I don't think it's really important. Jesse Mormon appearing for the petitioner. You know, I'm not going to understand you. You speak up. Oh, all right. Sorry. Does the microphone carry it? Or I have to. You know, that's more recorded than a microphone, but it's part microphone. I can hear an echo from it. It's part microphone, but it's. I have a little cold, but I can. Oh, you don't have to scream. I can hear you now. Well, your honor, is this the issue here is credibility. As as the record shows, Kanthasami was one of twenty one Tamils from Sri Lanka arriving there at the border in a short period of time. He had the misfortune to be the first one to have a hearing. They all had been coached to give false information about their itinerary. And that was the reason that he was finally found to be not credible. On the other hand, the people who had not yet started their hearings that had not committed this perjury. Almost all of them won their cases and they had all written their applications saying they had traveled the same route. So I believe there's not substantial evidence to discredit him when he was credible in other respects. And most of the other applicants were cases were granted simply because they had not started their hearings before the investigation started. Is that the only possible conclusion to be reached from the facts in this record? You can agree you're going to do something and change your mind before you do it. I'm sorry, I don't understand that. You can say we're going to tell a lie about the route. And in a moment of truth comes and you don't tell a lie. It can be maybe because you've seen the consequences to somebody else. But it also can be because you change your mind. I'm too honest to tell that lie. Can't it? I'm not suggesting that's the only conclusion I'm asking. The question is the conclusion you want us to reach. The only possible conclusion that they change their mind because whatever you said. I believe because of the length of time and the investigation, that that is the reason they change their stories. This you do. But what do we put our test? Well, Your Honor, the attorney for for Mr. not kind of saw me. He. He's he he at the at the re at the at the hearing that began a year later in April of 2003, he addresses the court and says that he's talked to the respondents in plural. He was representing several of them and that because of the developments in the case, he talked to them about getting straight on the on the itinerary. That's that's in the record. This wasn't the only alleged misstatement, though, was it? In terms of the record, in terms of the 1997 versus 1999, the issue of who assisted, whether it was the father who hawked his whatever. I mean, there were other concerns for the for the tribunals below where they're not. I don't I don't see those as inconsistencies. Your Honor, though, the date he first was very clear about being ninety nine. The second time it came up, it was introduced by the death of his sister, which was 1997. Just a couple of sentences later, either through the mistake of the translator or a slip of the tongue or slip of the mind, he said he was arrested in 97. But when it came up later, he was very clear that he was being questioned. Well, what about your rest in 97? And he's not answering. He's saying, wait, what? What are you asking about? He was very clear. It was ninety nine. He wasn't confused about it. And the fact that the first time he said his mother sold jewelry and they sold property. And the second time he said his uncle made some payment and they sold property. There's not an inconsistency. It just he didn't. Are you saying as a matter of law, the determination below that there were inconsistencies was wrong? I mean, that we have to conclude that they were not inconsistent as a matter of law. I understand the argument that has been made in the brief that these were really not inconsistencies. Are you saying that that is a conclusion that must be drawn as a matter of law? I'm just curious what you're saying our standards should be. Well, I think it's a fact question. I don't know that, you know, you could have. And are you suggesting we substitute our perception of what the record shows and your argument now that this was just a misstatement for the determination? By the board in the. Well, I would say there's. Excuse me. That's not substantial evidence. Those very minor variations, they're not inconsistent. And therefore, they're not substantial evidence for a finding of incredibility. Would be the bottom line that we should remain. Yes, it should be remanded. I think that the court can make a finding on credibility on a remand and that he could be granted withholding with a possible grant of asylum based on discretion of the attorney general. Well, that would be on remand to the BIA. Make that determination the first instance. Right. Yes. Do you want to save some time for a bottle? Yes. I just would ask that the court recently, Your Honor, made or wrote the decision in not a Roger. Yes. I'm going to ask the government about related case. And it has it has facts which we were not able to develop before. But evident is more evidence. So which we couldn't have otherwise supplement. Thank you. I'm familiar with it. If the government. Please, the court. I'm Aaron Burstein representing the attorney general. The issue raised in this case is whether the record as a whole would compel the conclusion that the petitioner in this case testified credibly to the immigration court. That the immigration judge found and the Board of Immigration Appeals affirmed that he did not. So what do we do? Mr. Bernstein, you state what would normally be the test. But here there's no doubt he's he's admitted that he he didn't testify. So if we use that as a test, no need to be here. If the case is over because he's already admitted he didn't tell the truth, but he's explained it. And does this explanation cause make it necessary for us to at least consider a possible new twist? And he says, yes. And and what he says, the record reflects. So he's given a reason and he's given facts to support the reason. And we have to decide, all right, is it enough? So don't you want to tell us why, in your view? That's not so, rather than tell us he he misstated, because he did. With the case is over, that's the test, isn't it? Yes, Your Honor. But I would say that that the petitioner's explanation does not suffice to restore his credibility. And there are a number of reasons in the context of this case as a whole as to why that is true. First of all, the it's significant that the petitioner recanted or modified his testimony only after being presented with contrary evidence by the results of the Joint Terrorism Task Force investigation. And what wasn't he isn't his explanation. He was concerned that the smugglers would have killed him. And that was confirmed by Agent Schultz. And isn't this kind of a peripheral, the kind of thing that we have said in the past, doesn't really isn't really central here. It relates to his his persecution, past persecution. And he's saying, look, if I if I tell the truth, identify the route, the smugglers will kill me. That was confirmed. Is that why isn't that exactly the kind of misrepresentation that we've held is not material in the number of cases? Well, it is material in this case, Your Honor, because the core of the core of Mr. Contessini's claim is based on his testimony that, first of all, he was arrested on two separate occasions by the Sri Lankan military on suspicion of being a member of the Tamil Tigers. And second of all, he has testified that that he was not a member of that organization and had no ties. None of his family members had any ties. What happened with that? Well, I'm getting to that, Your Honor. What's wrong with that is now we know in light of the additional facts that were presented in April 2003, that it's not true that that the petitioner had no ties to the Tamil Tigers. He at least availed himself of the services of a smuggling ring that that was run by members of that organization. Where's the evidence of that? I mean, the smuggling ring is different. You know, I mean, the problem I have is a bit of Nataraja. You're familiar with that, or are you? I'm sorry. It's not coming to mind at the moment. It's a no. Well, last month we heard we heard an argument in the case of Nataraja versus Gonzales, which was a case involving this very same group, the same smuggling group, the same officer, Schultz. Exactly the same situation, except that this was the person who was alleged to have made the call to Canada. And in fact, none of it washed out. There wasn't any. And in that case, since we're talking about consistency, here's what happened. The IJ found in favor of Mr. Nataraja. That was affirmed by the board. The government asked for a remand to present more evidence as to the ties to the Tamil Tigers. Went back to the IJ. The IJ did not find any evidence that supported it. Went up again to the BIA, and the BIA affirmed the IJ and said, look, there's just no evidence that this occurred. Now, this is a minor player in this whole, it's the same ring. It's the same group. He came over in the same bunch. And the petitioner is less culpable, if you will, than Mr. Nataraja, who was accused of being one of the people who allegedly made this assassination call to Canada. It just didn't pan out. I mean, it just didn't pan out on the evidence. So I'm looking now at Mr. Nataraja, who we heard last month over in courtroom one in this building. And we said, you know, in looking at this case, I said, if we're looking at consistency, how can I possibly treat this petitioner any different than Mr. Nataraja? And I know, unfortunately, you haven't read the case, and I don't want to – I've been in your shoes where you get a question out of the blue. But I think if it's all true, I just don't see how we can't grant relief here. That's my problem. I mean, this is the same agent, Shultz. This is the same group. This is the same allegation. He has the same cigarette – he's got cigarette burns from torture, the same as Mr. Nataraja did. I mean, there's no doubt he's been tortured. And it's all on this misidentification of the Tamil Tigers, you know, as being a member of the Tamil Tigers. So I don't know. That's my problem, is that, you know, we do try to be consistent. So now you've heard my speech. Thank you, Your Honor, for the additional information. I would tend to agree that my statement earlier was based on the record we have in this case. And on Agent Shultz's testimony, if additional factual developments would aid a better decision, then remand obviously would be the appropriate course. But in this case, if we just look at this record, basically what we have is Agent Shultz saying, well, this area is controlled by the Tamil Tigers and you couldn't get out without – I mean, it's the same testimony you gave in the other case. That's all you have. It's all hearsay. It's through the Canadian Mounties that there's a problem, supposedly. I mean, that's all hearsay stuff. Not that it's not inadmissible in an immigration, but there's no direct evidence in this case.  And I would add that the petitioner had ample opportunity to respond to that evidence. He was certainly on notice of what the contents of Agent Shultz's testimony was going to be, had a chance to object to both the submission of his memo to the record and his actual live testimony in April of 2003. The petitioner made no objection to that, to either of those sources of evidence, and was given a fair shake at objecting to it. What about counsel's point that the other alleged misstatements, when you look at it, it really does look like at most there may have been language problems. They don't seem to be true misrepresentations as much as just problems with language. The uncle helping, I mean, it does seem a fair characterization that the mother sold some jewelry and the uncle helped out. I mean, are these really fabrications or misrepresentations? Well, our reading of those statements, Your Honor, is that they are inconsistent. Just to take the whether the mother versus the father and uncle were involved in arranging for the smuggling, those statements were not given sequentially. They were at hearings a year apart. As we point out in our brief, there's also a difference in the amount that the petitioner said was given to the smugglers. The kind of issue going to the asylum claim is that if the father and uncle were involved, then that calls into question the credibility of the petitioner's testimony about any family ties to the Tamil Tigers. And again, that's based on the record as a whole and not necessarily the findings in subsequent cases. It's my fault. I should have called that case to your attention before asking about it. Usually I try to do that if I have a concern. I ask my colleagues if I can issue an order saying be prepared to discuss this case. So that fault is mine, although someone else at your department should have called your attention to it as well. I don't fault you. I think that person is going to hear about it too, right? Thank you very much for your argument. Thank you. Do you want rebuttal? And I apologize. I think I put an N in your name when I called you and there's no N there. As far as just the suggestion that Kandasamy had ties to the Tigers or his family had connections with the Tigers, there's no evidence of that. He denied it. The facts show, I mean, as in Nataraja, the expert said that the Jaffna area was controlled by the army. Kandasamy came from a little island which was entirely controlled by the Navy and the Tigers were not able to operate there except when he was arrested coming off his boat. They suspected the Tigers used boats for transporting weapons. So they do suspect people with boats of being connected. But Nataraja had a little stronger record than you do in this case. He had expert testimony. It was a very fully developed record. Yes. Well, it took a remand to do that. But there is discussion of the map at the record on pages 132 to 135. And the government's closing argument at page 243 says it's a Tiger-controlled area, which is not true. It was definitely, and Kandasamy said many times the Navy was there. Whether the family had ties during the time they were in the valley is not relevant. He was young. He's 13, 14 years old and can't be imputed to him that he had anything to do with the Tigers. And there's no evidence of that. As far as the amount paid to the smugglers, I don't think that's I'm not quite sure that there's a contradiction, but I don't think it goes to credibility because when bribes were paid to the Army, he didn't know how much. If he got more information later, the year in captivity, in detention, maybe he got better information. But I'm not really sure there's a contradiction there at all. And it's not not relevant to the merits of the asylum case. So I would submit on that. Thank you for your argument. The case is here to be submitted. Next case on the oral argument calendar, United States versus Whittington.
judges: Farris, Thomas, Schiavelli